We'll hear argument next in Case 19-368, Ford Motor Company v. Montana Eighth Judicial District Court and the Consolidated Case. Mr. Morata? Thank you, Mr. Chief Justice, and may it please the Court. Specific jurisdiction requires that the defendant have engaged in suit-related conduct in the forum state or that it have engaged in conduct relevant to the Plaintiff's claims in requirements mean anything, it is that the defendant's forum state conduct must be at least a but-for cause of the Plaintiff's claim. Conduct that does not cause a claim is, by definition, irrelevant to the Plaintiff's claim. The claims would be the same with or without the conduct. Once the Court accepts but-for causation as the minimum, approximate causation follows. Approximate cause standard recognizes that there are some but-for causes that are too attenuated to the illegal cause of the Plaintiff's claim and keeps those distant causes from creating jurisdiction. An approximate cause standard lines up with this Court's cases since international shoe and the principles of federalism, fairness, predictability, and administrability that have long governed this Court's analysis. Respondent's primary argument that Ford is subject to jurisdiction in Minnesota and Montana because it carried on similar unrelated business there is the same argument this Court rejected in Bristol-Myers Squibb. All that respondents add is that they are forum residents injured in the forum state. But the Court rejected that argument in Walden when it explained that an injury is, quote, jurisdictionally relevant only insofar as it shows the defendant has formed a contact with the forum state. And no one claims that respondents' forum state injuries show that Ford has formed contacts with Montana and actions of third parties and respondents would have been injured wherever they happened to be when the vehicles crashed. In the end, respondents pressed heavily on the notion that Montana and Minnesota have an interest in providing a forum to their injured residents. But that runs afoul of this Court's cardinal rule that the due process clause protects defendants, not plaintiffs, and not forum states. Decisions below should be reversed. Mr. Murata, Ford advertises in all 50 states, right? It does advertise and market its vehicles to some extent in all 50 states, yeah. Right. So if somebody is in an accident and they think the vehicle might have had something to do with it, is it enough under your theory for them to say, one reason I bought a Ford was because I saw one of their ads and I was persuaded that they made good cars? I think that would satisfy but-for causation, Mr. Chief Justice, because the purposeful availment through marketing is in the but-for chain. It may not satisfy proximate causation depending on the nature of the claim. For a routine design defect claim, the mere fact that you saw a Ford ad and were persuaded to buy it has nothing to do with the substance of the claim. By contrast, if your claim is- Why is that? I mean, you wouldn't be in the car if you weren't persuaded to buy it. Why doesn't that have a lot to do with the claim? Well, as Professor Grillmeyer says, if you're telling the story of this car accident, the fact that they saw a Ford ad has no substantive relevance to either the story or to any of the legal elements of the claim. But by contrast, if your claim is that Ford made certain promises to me in that ad, they warranted that the airbags would deploy, and I relied on that promise in buying the Ford vehicle and they breached that promise, that may satisfy proximate cause. But what I think the question shows is- But of course here, you don't even have the allegation that they were persuaded to buy the vehicles by the advertisements in the forum state. No, but it's a hypothetical question. And so, if the Ford ad said, you know, we make the safest cars on the road, then any claim of a defect, you would satisfy the jurisdictional requirement. It would satisfy but-for cause. It may not satisfy proximate cause, depending on the substantive law that's at issue. Merely saying we make safe cars might not rise to the level of a warranty that would be enforceable. But again, plaintiffs don't even satisfy the lower but-for standard in this case. But if the issue that's going to be litigated on liability is, say, for example, was the accident caused by a car defect or was the accident caused by the negligence of the driver, you've suddenly made that a jurisdictional question. Because if the accident is caused, proximate cause, due to the car, then you would say, well, there is jurisdiction. But if it's the driver's negligence, that doesn't have anything to do with Ford's presence. So it seems to me that's a serious and unfortunate consequence of your position. I don't think it is, Mr. Chief Justice, because we're not asking the court at personal jurisdiction to decide the merits of what the cause is. Rather, approximate cause describes the directness of the connection between the claims or the allegations that the plaintiff has made and the defendant's contact with the foreign state. Thank you, counsel. Justice Thomas? Yes, thank you, Mr. Chief Justice. Counsel, I'm a little confused. How do we get from the due cause argument? That seems to be a long journey. I'd like you to at least trace back for me, at least as far as International Shoe, the lineage for this proximate cause requirement. Certainly, Justice Thomas. So worldwide, Volkswagen itself says that the International Shoe framework is consistent with the original understanding of the Constitution and of the 14th Amendment. But if you look back to International Shoe, is that the specific jurisdiction is that you engage in certain conduct in the forum, and then you create obligations through that conduct, and then you can be sued for claims that arise out of that conduct. So that's the base of but-for causation. But as the lower courts have recognized, if your base is only but-for causation, you could have, for instance, the fact that the designer went to high school in a certain state is in the but-for chain of causation in some sense. So all that proximate causation does is it takes those attenuated but-for causes out of the analysis to prevent that absurdity. And that's how you trace it through. Well, that's still a bit confusing to me. But let me ask you just a practical question. Let's say that, first of all, Ford in the United States is fairly ubiquitous. So if I'm in a city like Bristol, Tennessee, and I notice on the internet that there is a used Ford Raptor available for sale at a great price and great condition in Roanoke, Virginia. So I drive to Roanoke, I buy it, keep it a while, but somehow it fails. And we could add the facts from these two cases to that. It fails. Can the resident of Tennessee who lives in Tennessee and wrecked the car or had the accident in Tennessee sue Ford in Tennessee? I think it would depend how you came to your awareness that there's a good value in Roanoke. If somehow Ford connected you to that through the inventory of a used car dealer, perhaps. But if it's just that you saw on the internet through a classified ad that there's a great value across the state line, the answer is no, because that's the action of third parties that can be impeded back. I understand. I'm just trying to figure out the sense of this. If I bought the Raptor in Bristol, Tennessee, could I sue Ford in Bristol? Under the same circumstances, I saw the exact same ad, but it was Bristol, Tennessee. If you bought it from just a private party, no. If you purchased it new from your local Ford dealer, yes. Thank you. Justice Breyer? Why isn't there general jurisdiction here? That's just a preliminary. There's no general jurisdiction. It's been conceded there's no general jurisdiction because Ford is not at home in Minnesota or Montana. It's not incorporated there and it's not headquartered there. All right. So the whole point of this whole doctrine, I take it, is not to put a defendant to the trouble of going to a different state where it's really unfair. I mean, unfairness unlies all these cases. And here, they did send the car in. Maybe they didn't know it would get there. Maybe there is no causal connection. But they do do a lot of business with the same cars there. And so since they do a lot of business with the same kinds of cars there, they have to be prepared to defend against this kind of suit. So what's unfair about it? What's unfair about it, Justice Breyer, is Ford cannot expect to be sued on this particular item. And the argument that you laid out was the exact argument rejected in Bristow-Myers-Squibb, which is that you sell lots of Plavix in California. You have to defend against these other suits. Why not bother with these tag-along suits as well? There's nothing unfair about it. But this court, 8-1, rejected that argument in Bristow-Myers-Squibb. And wasn't that the case where they were in a different... The plaintiff wasn't part of California either and all the injury took place outside. What was that? Well, it's true that the plaintiff wasn't in California. Oh, here he's in Montana. He's in Montana. But this court held in Walden unanimously that the location of the plaintiff doesn't matter and that the place of injury does not matter. As I quoted in my opening statement, this court held that injuries are irrelevant except for the fact that sometimes they shed light on whether a defendant has contacts with the forum. So trying to take Bristow-Myers-Squibb and appending onto it a forum plaintiff and a forum injury runs straight into Walden. I don't think respondents can get out of the combination of Walden plus Bristow-Myers-Squibb. So I think the answer to my question is some case law, which I will read. But if I came to the conclusion the case law didn't govern, what's unfair about it? Well, I think what's unfair about it is that Ford has to be subject to the rulings of Montana and Minnesota juries, be subject to the Montana and Minnesota rules of evidence and procedure. And even if you don't think that's a significant burden on Ford because Ford's a big company, the rule you'll announce in this case applies to much smaller manufacturers. It applies to regional manufacturers who are perhaps thinking about expanding into a new market. So in crafting the rule today, you shouldn't just look at the boards of the world. Consider the smaller manufacturers who don't have a national presence. I thought that the other side says, no, no, no, we're talking about a case where the defendant does a lot of business of the same kind in the state. Just not this car, but a lot of other similar cars. But if Bristow-Myers-Squibb means anything, Justice Breyer, it's that there's no sliding scale. You can't just say, well, if there's a lot of business, there has to be less relatedness because that is the exact holding of Bristow-Myers-Squibb. Thank you, counsel. Justice Alito? Let me pick up on a hypothetical that you have in your reply brief. I'll modify it slightly for purposes of simplicity. So suppose a product is sold in a particular state where the manufacturer advertises this product as a very safe product. A person purchases it and is injured by the product. Would there be personal jurisdiction there? Or would it be necessary for the injured individual to prove that the advertising as to the safety of this product was the proximate cause of the purchase of the product? In your hypothetical, Justice Alito, where the purchase occurs in the forum state, the advertising I think is just icing on the cake. The sale is what provides the proximate link in our view. All right. Suppose that the sale occurs in a different state. In that particular instance, I think what, and I don't want the court to get hung up on the phrase proximate cause because it carries with it certain weight from the merits inquiry. All we're saying is that it has to be a sufficiently direct cause of it. So in that case, it would depend on the particular claims that you're bringing. The claims in this case, I don't think merely saying I saw an ad, I bought the vehicle somewhere else would be sufficient. For other claims, it may very well be. So if the person purchases it in, I don't know, Idaho, drives it to, a person from Montana purchases it in Idaho because of advertising in Montana regarding the safety of this product, and then is injured in Montana. What would, would there be personal jurisdiction there? If the particular claims were only the design and manufacturing claims that we have here? No. If it were based upon promises made in the advertising, perhaps yes. But again, in these cases, there's no allegation that the advertising caused anyone to do anything. For these decades old vehicles that were not even, it was particularly to the Crown Victoria, were not even being advertised or sold at the time they were purchased in this case. Well, if we step back, and this is a little bit like Justice Thomas's question. We're talking about due process, which the international court, court felt, international shoe court felt free to either fair play for Ford or what was that issue in Bristol-Myers Squibb, which is a lawsuit in a suit that had in a state that has little connection with anything involved in this, in the suit. What would be the justification for a ruling in your favor here? The justification for a ruling in our favor is that the state, the foreign states don't have a connection to what's relevant, which is Ford conduct. In Walden, the court talked about the challenge conduct has to occur in the forum, that the relevant conduct has to occur in the forum. The relevant conduct here from Ford's perspective, and remember due process is a defendant-focused perspective, is the building of the car, the selling of the car, the manufacturing of the car, the design of the car. All of those things occurred outside of the forums. The forums have here is to the injury, which says nothing about Ford. Okay. Thank you, counsel. Justice Sotomayor. Counsel, in essence, what you are saying is that Ford can only be liable in its home state because only they're presumably under general jurisdiction and maybe even not even there because your but-for requirement would say wherever it manufactures, produces, if it didn't sell the car to the customer, there's no proximate causation. Correct. Proximate causation where the vehicle is built because, I mean, let's be clear about what our approximate cost standard is. It's at page 42 of the opening brief and page 22, 23 of the reply brief. It's that the operative facts of the controversy arise from the defendant's contacts with the state where the defendant's in-state conduct form an important or at least material element of proof in the plaintiff's case. So the place where the vehicle is designed is an element of proof in the case. And where the vehicle is sold by a Ford dealer, Ford sold it to the dealer, the dealer now sells it to a customer. Is also an element of proof of the plaintiff's case because one of the elements of a product claim is that the manufacturer introduced the article into commerce and that the vehicle has not changed condition since that first sale. All right. So let's assume that a Ford vehicle was designed in Michigan, manufactured in Kentucky, sold to a dealership in Kansas City, Missouri, but purchased by a resident of Kansas City. They saw a Ford advertisement in TV. The plaintiff wants to assert various claims for design defect, manufacturing defect, false advertising, and negligence. Is there any single state where the plaintiff could allege all those torts? Certainly, Justice Sotomayor. And I want to, I think, note something that I think is implicit in your question, which is we're not saying that design claims have to be brought somewhere, manufacturing claims have to be brought somewhere. It's the suit as a whole, as this court talks about. So you can bring it where the vehicle was designed, Michigan, where the vehicle was assembled, Kentucky. I think where the advertisements were sold, which was in Missouri and where the vehicle was purchased in Kansas. So you would say any one contact would be enough. But how about if the defect was in the airbag? Would Missouri still have jurisdiction over Ford or Kansas, you said Kansas would, if the defective airbag were not the original airbag, but instead a new replacement airbag installed by a Ford dealership? And then take it a step further. Is it the airbag, or is it an old sensor in the car that caused it? How do we determine jurisdiction then? You would determine jurisdiction then because the repair that was made at a Ford authorized dealership, which is in contact with Ford, with the forum, and it arrives out of that. No, that was in Missouri. Remember the car was bought in Missouri. The plaintiff was in Kansas. The plaintiff drove it and lives in Kansas. He saw the false advertisement in Kansas. Sorry to the residents of Kansas, Missouri, that I'm confusing there too. The problem is, I believe that there's Kansas, Missouri, and Kansas, Kansas. But what I would say in your hypothetical, Justice Sotomayor, is that where the vehicle was repaired would be proper jurisdiction, perhaps not the place they took it back to. And I understand that if you live on the border of the two states like that, you may treat them as interchangeable. But of course, this court has repeatedly said that in personal jurisdiction, state lines matter, even though it may not seem functionally to matter in the markets where you exist. Thank you, counsel. Justice Kagan? Mr. Morata, going back to your colloquy with Justice Alito, a simple hypothetical. I buy an Apple computer in New York. I move to California. The computer catches on fire. I get the Apple computer. But I can't sue in California where I live and where the injury took place. Is that right? That's right. I mean, of course, Apple has headquarters in California, so there's general jurisdiction. You're right. That was a bad example for that reason, right? But, you know, I've moved to Illinois. It doesn't matter. But that's right. Yeah, understood. Yeah. So essentially, you are substituting what I think people have assumed in these product cases, which is if you are in a place and the injury takes place in a place because of a manufacturing defect or a design defect, you get to sue. You're saying, no, it doesn't really matter where the injury took place. What matters is where the first sale of the product took place. Ours is not a first sale rule, Justice Kagan. But that would be the effect of it. I mean, it might, you might not label it that, but that would be the effect of it, wouldn't it? I don't know. It's that any place that there is a proximate causal link, those would be the- I know, but the first sale, the place of a first sale, you're saying there is a proximate causal link. And the place where the injury took place, you're saying there's not. Is that right? That's right. But it doesn't limit jurisdiction to only the place of first sale. Okay. You can also do it where it's manufactured, for example. Okay. Then that's notwithstanding that this company, and let's just go back to advertising. It advertises, it sells, it services these automobiles in exactly the same way in these two states. And that was the same argument that was made in Bristol-Myers Squibb, which- I have to say, you keep saying Bristol-Myers, but Bristol-Myers, there was absolutely no connection. The plaintiffs weren't residents of California. They didn't use the product there. They hadn't been injured there. Now, that's three differences from this case. And I think even going back further than to Walden and Keaton, Keaton says the plaintiff's connection to the forum doesn't matter, and Walden says the injury in the forum doesn't matter. Well, in Walden, the defendant has absolutely no connection to the forum state. But here, as we've just established, Ford sells cars, services cars, resells cars, advertises cars in Montana. But Bristol-Myers Squibb proceeded as with syllogism. It said that Walden illustrates the arise out of a relate to requirement. And it said that in Walden, we held that an injury in the forum is not sufficient. And it said this case is even easier because the plaintiffs did not even suffer injury in the forum. But the major premise of Bristol-Myers Squibb is that an injury in the forum is not sufficient. Thank you, counsel. Justice Gorsuch. Good morning, Mr. Murata. It seems to me this case really puts into sharp relief the difficulties our doctrinal tests have created. We've made a firm distinction between specific and general jurisdiction for many years. We say specific jurisdiction has to arise out of, everybody seems to know what that means. Nobody knows what relates to means, the other part of the test. And so I guess I want to take you back to first principles along the lines of Justice Thomas. What does due process require? I suppose one could say it's whatever fair play, whatever we think fair play means. In which case, you might run into some of the troubles we've been hearing some of the questions about. But it could mean, due process could mean a couple other things. One, it could mean the law of the land. Are you being hailed into court in accordance with the law of the land? And surely that's met here, the state long arm statute, no one can test that it reaches you. Or it might mean that, as originally understood, the due process clause, then the ideas behind the due process would not have allowed a defendant to be hailed into court in these kinds of circumstances. I didn't see a lot in the briefs addressing that question. So it's really something I wanted to ask you and your colleagues today about. Do you have anything you want to comment there? Sure, Your Honor. There is certainly a wide originalist, I think, new view on personal jurisdiction. So Professor Sachs that essentially says that Penoyer versus Neff was directly decided. Of course, respondents are not urging a return to Penoyer versus Neff. What this court has said in the past is that the international issue framework is consistent with the original understanding of the 14th Amendment. And so when you apply the international issue framework, what the first principle is, is what distinguishes general from specific jurisdiction. Specific jurisdiction is you go into a state and you perform certain acts. You are then liable for claims that arise out of those acts. But here, the forum states are seeking to hold Ford liable for acts of manufacturer, of design, and of sale that occurred in other states. Remember, if Ford had done nothing in Montana and Minnesota in these cases, the claims are exactly the same as they are before you. And that's the key difference. Thank you. I think it all... Justice Kavanaugh. Thank you, Chief Justice. And good morning, Mr. Murata. Ford litigates lots of cases in Minnesota and Montana. Why doesn't it want to litigate these cases in Minnesota and Montana? Well, I think in part Ford wants cases to go back to where they should be decided. And of course, you know, Montana and Minnesota have particular judges, have particular juries, have particular evidentiary rules. There may be some cases where Ford would otherwise waive an available personal jurisdiction defense, but that's an option that's up to the Ford and to the defendant. And the fact that Ford may, you know, litigate in these forums anyway, you know, think of the smaller manufacturers who sell minimal amounts of products in the forum, who may have never litigated a product case there before. The rule you announced today is going to be a little different. If we look at... There have been a lot of questions about our precedent, but the sentence from Worldwide Volkswagen, and you're familiar with the sentence on 297 and 298 of Worldwide Volkswagen, I guess it ends at the bottom of 297. If we follow that sentence, you lose, correct? I don't think so, Justice Kavanaugh, because that sentence was about purposeful availment. You have to put that sentence in context. The sentence before it says when a corporation... Sorry to interrupt. If we just follow what the sentence says, though, if the sale of a product of a manufacturer distributor rises from the efforts of the manufacturer distributor to serve directly or indirectly, the market for its product in other states is not unreasonable to subject it to suit. In one of those states, if it's allegedly defective merchandise, has there been the source of injury to its owner or to others? If we just follow that sentence, you lose, correct? I don't think so, Justice Kavanaugh, because it's unclear and I think ambiguous from the sentence whether the court is referring to a sale of the product in that forum or a sale in the product in another forum. And of course, the issue that we're talking about today wasn't before the court in Worldwide Volkswagen, because Audi and Volkswagen hadn't contested personal jurisdiction in this court. That sentence has been quoted in other cases, correct? Aspects of that paragraph have been... I mean, Burger King talks about the sentence after, which is the personal jurisdiction over a corporation that delivers product, which I think, again, creates that ambiguity. And Keaton, again, talks about, I think, that same sentence. So the sentence about Audi and Volkswagen has really never else a minute to wrap up. Thank you, Mr. Chief Justice. Two points I'll make. The first is that many of the questions I've gotten today have talked about the alleged problems with approximate cause test. But what the lower courts have emphasized is that but-for causation is at least the minimum. And all this court has to decide to resolve these cases, as happened in the Tenth Circuit with then Judge Gorsuch, is you have to hold it's just some causal standard. And you can leave for another day whether it's approximate cause or some other degree of causation. And the second is to take it back to the first principle. It's that Ford should only be held to account for things it did in the forum state that are challenged by the suit. And here, Ford did not do anything in these forum states that is challenged by respondent suits. If the conduct didn't happen, the claims are the same. And that's how you know it's irrelevant forum conduct, which cannot be the basis of counsel. Mr. Gupta. Mr. Chief Justice, and may it please the court. This court has never read the due process clause to deprive the states of their sovereign powers to try cases in their own courts and protect people injured within their own borders on anything like the facts presented here. That is where the following two things are true. The defendant's product injured the plaintiff in the forum state. And the defendant through its in-state activity has deliberately cultivated the market for that product in that state. Over the objection of 40 state attorneys general, Ford asks this court to extinguish the state's traditional authority, even in this paradigmatic scenario, based on an elusive proximate cause standard. And I think we just heard how elusive it is. Jurisdictional rules should be simple. Ford standard would introduce tremendous uncertainty and generate needless litigation. It would break up garden variety accident cases. It would leave innocent local businesses holding the bag for foreign companies as the home builders and main street business briefs explain. And it would send injured plaintiffs on an irrelevant scavenger hunt to trace the route of the particular pill or toaster that caused injury just to try to figure out where to sue. The constitution does not compel such an arbitrary regime. Ford standard would create practical problems without any countervailing benefits of fairness or federalism demanded by the due process clause. The plaintiffs here aren't forum shopping. They sued where everyone would expect them to sue. And Ford can't even credibly claim that it would be unfair or burdensome to face suit there or identify any sovereign with any greater interest. Ultimately, Ford's position turns personal jurisdiction into a game. The defendant can cut off access to the state overreached or because fairness compels it, but simply because it makes it harder for people to get access to justice. That is not due process. Council, one of your amici, the National Association of Home Builders, has a test that relies on the so-called stream of commerce theory. And I understand your theory to be different. Could you tell me what you Yes, Mr. Chief Justice, I think that the stream of commerce test is answering a different question from the one that's presented here. The stream of commerce test tells you whether there is purposeful availment, whether there are the requisite contacts. And that theory relies on the idea that even if the defendant hasn't done what would subject it to suit in the forum otherwise, that the stream of commerce theory can supply the requisite contacts because either because the manufacturer has put the goods into the stream and they end up there, or depending on whether you accept Justice O'Connor's view, there's something else that has occurred. But here, purposeful availment is conceded. And so the question is, once you have the requisite contacts, as Ford does with the forum, is the suit related enough to the forum and the contacts that the defendant has in the forum that this is specific jurisdiction and not general jurisdiction? Counsel, let's say there's a retired guy in a small town up in Maine who carves decoys, and friends say, these are great, you ought to sell them on the internet. And so he gets a site on the internet, and it has a little thing that links to it that says, buy my decoys. Can he be sued in any state if some harm arises from the decoy? Say it has lead paint or something. By putting some advertisement on the internet, is he exposing himself to suit everywhere in the country? No, and I do think that's a much harder problem. I think first, we'd have to ask, are there isolated sales, or is he really doing something to inject himself into the forum state? If he doesn't have any advertising that's targeted to a particular state, it may be that his sales are sufficiently isolated that he's not even gonna... Purposeful availment won't even be satisfied. But assuming that it is, assuming that there are sales in the forum, and he knows that and expects that and encourages that, it's possible that that is gonna give rise to specific jurisdiction for that injury. But we would need to know at the first step whether he's really doing something to deliberately cultivate a market in the forum state. I think that's a big question there. They get the internet wherever in the country, and that's how he's trying to cultivate a market. Is that enough or not? Well, no. I mean, I think we would need to know, has he ever sold... Let's say the suit is in but in theory they could sell to California, and then there's one sale in California. I'm not sure that's gonna be enough for purposeful availment. But I really do think it is. Justice Thomas? Thank you, Mr. Chief Justice. Mr. Gupta, I would like to pick up there, too. You used the term related to, and the discussion, what is enough risk? And I'm not clear as to, even with the hypothetical, how related it must be. Could you put some contours on that for us? Sure, Justice Thomas. And I think you can pick up where you left off in BMS. And BMS is, I think, the case that is most on point and about relatedness. And what you said there, that a suit relates to the defendant's contacts with the forum, where there's an affiliation between the forum and the underlying controversy, principally an occurrence. Well, we know that happened here. There was an occurrence in the forum that was subject to the state's regulation. And we think relatedness under your cases can basically be distilled down to two inquiries. And it yields a simple test in products cases. First, you have to ask, would the defendant be submitting to the coercive power of the state with little interest in the controversy? That was the problem in BMS, right? The state of California had little interest in that controversy because those people were related. I think relatedness is asking about whether the reciprocal legal obligations at issue were created by the defendant's in-state contacts. And do the plaintiff's claims really come within those contacts? And Justice Thomas, my friend, in answer to your question about what does this all have to do with due process and international issue, invoked that concept of reciprocal obligations. We think that's critical here. What you're really asking when you ask about defendant's contacts are what kind of legal obligations arose from that? And here, the legal obligation is pretty simple. It's the legal obligation that you've got to compensate people when you sell all this exact product in the forum and it hurts somebody. Thank you. Thank you. Justice Breyer? Well, the other side, I think, is saying jurisdictional rules must be clear. A defendant does not do enough business in a state, say Illinois, to make that defendant at home in the state. But he does do some. Now, he sells a product from Maine, let's say. Take the hypothetical that the Chief Justice gave. And the person who bought it has never seen his advertising, though he advertises a lot. The person who bought it didn't use his dealer, though he even has some there. And you think, under those circumstances, he can bring his lawsuit. Is that right? No, I'm not sure that he could, Justice Breyer. I would need to know more, but I think it sounds like that's an isolated sale in the forum in Illinois. It's an isolated sale in the sense that that particular sale has no contact except the injured person and the place of accident in Illinois. But the defendant does loads of similar business in Illinois. Does that make a difference? Yes, Justice Breyer, that does make a big difference. That's what I thought. Now, the problem, I think, that the other side is saying is there. How much business does he have to do? I mean, if John Deere has a defective lawnmower, or John Deere has a defective harvester in Illinois, what if it sells 4 billion lawnmowers in Illinois, but no harvesters? I mean, what kind of business? It's not enough to be at home there, but it is some. Well, how much and under what circumstances? He said that's totally unclear. That's why they go to their rule. Well, Justice Breyer, let me try to give you some comfort on that, because I think if the fight here is over whose rule is more predictable and certain, I think we win hands down. Our test is pretty simple. It's always going to be possible to know whether the person was injured in the forum state. And then I think it's usually quite easy to figure out, was that exact product sold in the state? So in your example, if John Deere sells tractors, but it doesn't sell the harvester in Illinois, then that is not going to support specific jurisdiction. How many of the same product? So that's a question on purposeful availment, right? Is it isolated? Is it enough? But once you've satisfied purposeful availment, which again, of course, is conceded here, then the question is, are those sales that are not isolated, that have targeted the market, are they of the same product? And I think if you have the same make model in here, it's going to be the same product. We're talking about mass produced goods. It's not a difficult inquiry. And I think the inquiry is basically an objective one. The defendant has the choice to differentiate its products. If it wants to sell cars in California, but it doesn't want to sell trucks in California because it doesn't like the way California regulates, it is free to do that. And then it would not be subject on our test to specific jurisdiction in California. Thank you very much. Thank you. Justice Alito. What if the product involved here was a custom made product? Let's say it's an antique car that's been rebuilt and it is advertised on the internet and purchased in one state, driven into another state and accident occurs in the other state. The claim is that the design of this car was negligent. Would there be personal jurisdiction? I don't think so, Justice Alito. I think there's one case of yours that talks about custom products. In the Goodyear case, you said the problem there was that the accident hadn't distributed in North Carolina, but there were custom deliveries of tires for concrete trucks and various other kinds of trucks there. And the court distinguished that. So I think when you have custom products that are designed, bespoke products designed for particular people, that cannot easily be assimilated into a test that it's designed for mass produced products. All right. Well, suppose it's not a custom product. And now we'll get to a hypothetical that's similar to the Chief Justice's. It is a product that is produced in somewhat limited quantities by a person in, let's say Maine, but advertised on the internet. That's the only way anybody learns about it. And purchases are made over the internet. Someone purchases it in another state and is injured in that state. Would there be jurisdiction? Not unless the seller has deliberately targeted and cultivated a market in that forum. And that's not a relatedness question. That's a purposeful availment question. No, it's an antiquated question. It's the 1945 international shoe traveling salesman question. So we could perhaps decide this case within the contours of our existing cases because there's nothing particularly 21st century about what happened here. But we're in a strange situation where we are not purporting to apply what due process was understood to mean when the 14th amendment was adopted. We are applying a 1945 standard adopted by the court when it put on its fair play hat and said, this is fair play as we understand the world in 1945. But the world in 2020 is completely different. So you may just say, well, decide this on the basis of your existing case law and not propose anything grander. But if you have a solution to the bigger problems that have been framed by some of the questions, it would be interesting to hear it. It's a very fair point, Justice Alito. And I think it is true that the evolution of the cases, particularly in the early 20th century, reflected changing market realities. That as we have more of a national economy, a more integrated economy, the jurisdictional standards began to reflect that. And I think it is fair to say that there's been some stasis since then. And you've left open a lot of questions in cases like Nicastro and Asahi about where to draw the lines. And those can be very difficult questions for the lower courts, and they'd appreciate some clarity. But I also think something that the concurrence by Justice Breyer and you, Justice Alito, in Nicastro is important. And that concurrence cautioned against trying to write rules with a broad brush that will apply across different market contexts and have unanticipated consequences. And so that's why- Thank you, Counselor. Justice Sotomayor? Counsel, I just have one question about your same product rule. How about if it's a claim about a defective airbag, and it wasn't in one car sold by Ford, but it's in another car, millions of cars that are sold in Minnesota. But this one car is not sold in Minnesota. Would you still have jurisdiction? So, I think if Ford says, look, we didn't sell that airbag in that state, and they might have done it on purpose. They might, for example, in California, there are emission standards that are different. I think the defendant has the ability, at least on our test, that the defendant has the ability not to sell that product in that forum. But it has to be objectively discernible to everyone that it's a different product. And I think in your hypothetical, they would be saying, we're not marketing the same car, we're marketing a different car. But it has to be objectively discernible, because I don't think we want a test that turns on what's in the guts of the car. But if they say, look, there's the Model X, and we sell it in Minnesota, and then there's the Model Y, and we don't sell that in Minnesota, then that would not satisfy our test. Thank you, Counsel. Justice Kagan? Mr. Gupta, on this same product rule again, I mean, first, let me make sure I understand the rule. So, if I'm Ford, and I come up with a special kind of pickup truck, and I decide, really, the market for this pickup truck is the southeast part of America, and I only advertise it there, and I only sell it there. Then if somebody takes the pickup truck to Washington State, and something happens, then you're saying I cannot sue you in Washington State. Is that right? I'm saying that it fails our test, Justice Kagan. I don't think that that means that it forecloses some alternative possibility of specific jurisdiction. And I think this goes to Justice Alito's question, and some of the other questions about stream of commerce. If the court picks up that stream of commerce question and decides what constitutes a purposeful availment when you don't have the same kinds of sales in the forum as you do here, then I think you could answer that question, and you could conclude there would be specific jurisdiction, but it would be on an alternate theory. It wouldn't be on our test that we think decides these cases, and I think decides a whole lot of products liability cases. I see what you're saying. And on your test, focusing on your test, how about if Ford does something, you know, a little bit different? It says we have this pickup truck, and mostly we're going to market it in the southeast, but we can't say we do nothing in the northwest. You know, we do a little bit. There's one dealer who's out there selling these pickup trucks. What happens then? Well, if that one dealer is really selling those pickup trucks in the state, I think that that would satisfy our test pretty easily. I mean, I think, but I do think the reason why I say that, you know, it matters whether they're selling the same thing in the state is because the defendant has the ability to structure their primary conduct. If they say, you know, we want to sell some stuff somewhere, we don't want to sell some, and to take the cold, the southern states example, maybe they sell a car that doesn't work very well in cold climate, and they know that, and they don't want to be sued in Alaska for the car that they only sell in Florida and Arizona. So they have the right to do that. Your cases have always acknowledged that. You can exit a market. You can exit a market partially. Sorry, if I could just interrupt, Mr. Gupta. Final question. We talk a lot about fairness in this argument. My understanding of our law is that federalism has become an at least equivalent concern in the due process cases as fairness. So how does that cut with respect to your theory? Yes, I think you're absolutely right, Justice O'Connor, and I think federalism cuts very strongly in our favor. I mean, it's why you have 40 states coming in and urging you not to do what Ford urges, and that's because the states have a manifest interest in trying cases within their procedures to their own law and protecting people within their own borders. And you dealt with this in BMS. I think that the driving force of the opinion in BMS was a concern for interstate federalism, and in particular, a concern about one state meddling in the affairs of another state, say California, saying we want to hear the claims of Ohioans when Ohio has a right to apply its own procedures to its own laws. You don't have any kind of meddling like that here. Justice Gorsuch? Good morning, Mr. Gupta. I think the Chief Justice and others have pointed out the difficulty of our purposeful availment test in an internet age, and some of it was cabined by a rise out of when that had some causal link, but now we're blowing past that and we're adorning relate to to mean something more, which I totally understand, and I get your same product test is a limiting way. So I think there are issues there. What if, for example, Ford didn't sell Explorers in Montana, but the part that allegedly failed in the Explorer by your client in Montana is also sold by Ford and lots of other models in Montana, which is a relevant product. Is it the Explorer or is it the part? And I foresee a lot of difficulties there, all of which, again, takes me back to, at least me, to these first principle questions. We seem to be blurring the line between specific and general jurisdiction. If specific jurisdiction is just fair play, I get that this seems like fair play, but then where is the limiting factor there? Do you have anything about the original meaning of the due process clause that you want to argue here that might provide some helpful guidance? Okay, Justice Gorsuch, that was a lot. We've got the internet, the components, blurring the lines between specific and general and the original meaning. Let me try to take them really quickly. First on the internet... I threw it all out there for you to have at it. Thank you. On the internet, again, I just think that is probably the most vexing issue in personal jurisdiction. And I do think if you had a case that was about personal jurisdiction on the internet, you'd have a whole lot of amicus briefs. You would get some sense of the unanticipated consequences. I don't want to waste my time on that. Okay. Okay. The component one is... I want to make sure I answer that. I do think that products liability turns on the finished product that's sold, if you think about your air-liquid case, which was all about that. And I think, again, it has to be objectively discernible. So if there's some component in there, but we don't know that the defendant has made a decision about how it's going to submit itself to the market, I don't think it's a good idea to have... We know Ford sells this defective component in millions of cars in Montana. Let's say we know that. I would think the next case, you may not be arguing it, but a friend of yours will be here right fast saying that that's the same product. Right. Well, I think the way our test works is the defendant gets to choose how it assembles the product and what it puts out into the world and how it's submitting to the state. So I would say I would not want the test to turn on just the components. I don't think what we're proposing blurs the lines of specific in general at all. I hope it promotes clarity and continues the project that this court has had of separating these two different bases for jurisdiction, because what could be more specific than the had the injury and the specific make, model, and year of product. And then finally on original meeting, Justice Gorsuch, I think the framers would have been pretty surprised by a lot of the personal jurisprudence. I think my friend on the other side is asking you to announce a constitutional rule that turns on the first sale of a widget five sales ago to somebody else in a state that has no interest in the country. I guess I agree with you. I was just curious what you would have us say. But that's okay. I've run out of time. I'm sorry. Thank you, counsel. Justice Kavanaugh. Thank you, Chief Justice. And welcome back, Mr. Gupta. First of all, can you explain under your test what you think you have to show to satisfy purposeful availment and then what else you need to show to satisfy relates to just so I'm clear on those. Sure. Yeah. And this is a feature of the weird way that this case comes to you where purposeful availment is conceded. I think Ford was right to concede it because this is an easy case for purposeful availment. As some of the questions have shown, it can be more difficult. But I think your cases talk a lot more about what constitutes purposeful availment. And I think what you've said is you've got to target the market. You've got to be deliberately cultivating the questions about the stream of commerce. And can we just bracket those for the moment and say as long as you have purposeful availment that doesn't rely on a stream of commerce test, the distinct thing that relatedness does that's different is that it says once you've got those contexts, we're now going to try to figure out are those contexts sufficiently related to the claim here, the person's injury, where it occurred and the obligation. I'm sorry to interrupt. I mean, if purposeful availment's been satisfied, then so long as the injury was in the forum state, that's going to be good enough. No, Justice Kavanaugh, not quite. I mean, I think, yes, you have to have the injury in the state, but then you've got to figure out is the plaintiff's claim coming within the scope of the legal obligations that the defendant has subjected itself to in the forum. So like, for example, if a company sells computers in the state, they may be purposefully availing themselves, but if my claim is really about software that they haven't sold in the state, you're going to have purposeful availment, but you won't have relatedness. You heard the response to a worldwide Volkswagen. You had emphasized that case quite heavily in your briefs, and you heard the response from the other side. Your response to that? Well, I think what that colloquy showed is, you know, it's hard to answer the question on the other side. I think worldwide Volkswagen had precisely this kind of situation in mind. The reason they did is because Volkswagen and Audi hadn't raised a jurisdictional objection, but there were four Audi dealerships in the state in Oklahoma in 1980, and they were selling these cars. And my friend below, in the courts below, referred to that passage as a description of what would have happened if Audi or Volkswagen had raised this jurisdictional objection. Frankly, I just think everyone has always assumed that that's the easy case, and that's why you've referred to it over and over. That passage is kind of the paradigmatic example of a specific jurisdiction, and you did so most recently in your unanimous opinion in Goodyear. So I get that, you know, you can say that it's a dicta, but it's a very important dicta that's been repeated over and over again, relied on by the lower courts, and reflects kind of a core scenario of specific jurisdiction that I think is satisfied here. Thank you. A minute to wrap up, Mr. Gupta. Thank you. At the end of the day, I think any sensible resolution of these cases is going to have to be grounded in some combination of interstate federalism, fairness to the defendant, predictability, and frankly, common sense. Those are the things that I think the Due Process Clause is trying to accomplish in this area. And I think Ford's approach flunks all three tests. When it comes to federalism, they just can't get around the fact that their approach extinguishes the sovereign power of the states that have the greatest interest in cases like this and shuffles it arbitrarily to states that may have no interest, all in the service of an extremely difficult-to-apply proximate cause inquiry. When it comes to fairness, Ford claims no unfairness. If you really press them and try to, if you were to try to explain to the public how this result is grounded in fairness, I think it would be very difficult to do. And finally, their approach would inject tremendous uncertainty and unpredictability into the American litigation system. We urge you to affirm both judgments. Thank you, Counsel. Three minutes, Mr. Barada. Thank you, Your Honor. Three points I'll make on rebuttal. The first is to administrability. Their related discussion has no basis in the common law or in the courts below. Consider the questions we pose at page 19 and 20 of the reply brief. And they've been the ones that were Is the similar product sufficient? Does it have to be the same features that are alleged to be defective in the case? Or take advertising, which has been posited as one of the contacts that can create jurisdiction. Does it have to propose a sale of the product directly, mere technical support or warranty support? How about merely raising brand recognition? And how long does this have to take place? One year of sales, many years of sales? These are the questions that are going to trouble the lower courts for years if you adopt that test. A causal test, by contrast, has a rich history in the common law. And it's, in fact, the majority rule in the courts that have applied, that have confronted this question. And they carry out the application of a causal test without any real trouble. And that's because, as this court noted in Lexmark, these are principles that are widely known to judges and can be applied easily, even if there are odd corner cases. And finally, our rule is trans-substantive. You can apply our causal test in all kinds of cases, from contrast to towards to otherwise, whereas respondents' tests only, at most, solve a subset of product cases. The courts have been crying out for a clear rule on a rise out of a relate-to, and a causal test is the appropriate one. Second, the discussion confirms that respondents' argument is essentially just Bristol-Myers Squibb plus the occurrence of injury in the forum. In other words, a sale of sufficient number of the same product plus the occurrence of the injury. But going back to first principles, all the way back to Helicopteros, which announced a rise out of or relate-to, the court made clear that even regular purchases of a product in the forum are not sufficient to create jurisdiction where the claims do not relate to those purchases. And it goes back to Hansen v. Fekla that the mere presence of the plaintiff in the forum, or even the senator of gravity in the forum, is not sufficient to create personal jurisdiction. Their limiting principle goes contrary to every principle this court has laid out in its cases, which it allows the plaintiff's claims to direct the analysis. And finally, the interest analysis and the weighing analysis that respondents propose has been rejected by Hansen. This court said in Hansen, the forum does not acquire jurisdiction by being the center of gravity of the controversy or the most convenient location for litigation. The issue is personal jurisdiction, not choice of law. And as this court said all the way back in Worldwide Volkswagen, there can be cases where it is not unfair to the defendant from a practical standpoint, where perhaps the state even has the greatest interest from a choice of law standpoint, but yet still federalism, acting as an instrument of interstate federalism, can still deny personal jurisdiction to the forum state. That is this kind of case, because the forum states are not regulating something that Ford has done in the forum. Thank you. Thank you, counsel. The case is submitted.